UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| CHRIS SAUTER, individually and on behalf of a class of similarly situated persons,<br>　　　　Plaintiff,<br><br>vs.<br><br>CVS PHARMACY, INC.<br>　　　　Defendant. | Case No. 2:13-cv-00846<br><br>Judge Graham<br><br>Magistrate Judge King |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO STRIKE PLAINTIFF'S CLASS ALLEGATIONS**

Before any discovery has occurred, Defendant has filed a motion to strike Plaintiff's class allegations. Motions to strike class action allegations are rarely granted, as numerous courts have recognized, and even less frequently granted without the aid of discovery. In fact, nearly every court presented with a motion to strike TCPA class allegations prior to discovery has denied the motion, including where, as here, the class is not so narrow as to require the court to make individualized findings which would settle the dispute at hand. Accordingly, Defendant's motion should be denied.

**BACKGROUND**

This case arises under the remedial provisions of the TCPA, a statute enacted more than twenty years ago in response to consumer outrage over the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012) ("Voluminous consumer complaints about abuses of telephone technology ... prompted Congress to pass the TCPA. Congress determined that federal legislation was needed because telemarketers, by operating interstate, were escaping state-law prohibitions on intrusive nuisance calls.").

1

Plaintiff Chris Sauter is one of many American cellular phone users pestered by unsolicited updates and notifications from retailers. He received numerous calls on his cellular phone from CVS regarding prescription refills, despite the fact that he did not consent to receive the calls. (Am. Compl. ¶¶ 21-24.) In fact, he continued to receive calls even after serving an initial Complaint on CVS. (*Id.* ¶¶ 25, 26.)

The calls received by Plaintiff contained robotic scripted messages that relayed general content about a prescription refill. (*Id.* ¶ 23.) At various points, the messages inserted personal information relevant to Plaintiff in a second, different voice. (*Id.*) Concerning enough, Plaintiff did not knowingly or willingly provide his personal cellular phone number to Defendant nor subscribe to Defendant's prescription refill notification program or any other telemarketing programs offered by Defendant. (*Id.* ¶ 32.)

The TCPA prohibits the use of an ATDS and/or prerecorded message to call any telephone number assigned to a cellular telephone service absent an emergency purpose or the prior express consent of the called party. 47 U.S.C. § 227(b)(1)(A)(iii). Additionally, the Federal Communications Commission, which is statutorily charged with interpreting the TCPA, confirmed that calls that utilized an ATDS or prerecorded message were a greater nuisance and invasion of privacy than live solicitation calls, and those calls can be costly and inconvenient, as wireless customers are charged for incoming calls. *In re Rules & Regulations Implementing The Tel. Consumer Prot. Act of 1991*, 23 FCC Rcd. 559, 562 (2008). Moreover, on October 16, 2013, an FCC Report and Order requiring prior express *written* consent for all autodialed or prerecorded telemarketing calls to wireless numbers took effect. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278 Report and Order, FCC 12-21, ¶ 4 (February 15, 2012) ("Robocall Order"). Mr. Sauter brought this

action under the TCPA on behalf of a putative nationwide class of persons who, like him, "received a non-emergency telephone call from CVS to a cellular telephone through the use of an automatic telephone dialing system or an artificial or prerecorded voice and who did not provide prior express consent for such calls[.]" (Am. Compl. ¶ 42.) Plaintiff also has brought this action on behalf of additional subclasses of persons. (*Id.* ¶¶ 43, 44.)

## ARGUMENT

### I. Plaintiff has not a pled an impermissible fail-safe class.

Defendant asks the Court to strike the class allegations on the theory that the class as defined would require the Court to inquire as to the merits of the case and make individualized findings. Defendant asserts that the Plaintiff's class allegations are deemed a fail-safe class and thus impermissibly ascertainable. Defendant brings this motion prior to any discovery and with no supporting evidence as to how the Court would be forced to undertake individualized fact-finding with regard to the members of the alleged classes. In short, Defendant's motion is at best premature and more likely erroneous.

Courts typically disfavor motions to strike in general. *See Paglioni & Assocs. v. WinnerComm, Inc.*, 2006 U.S. Dist. LEXIS 80318, at *2 (S.D. Ohio Nov. 1, 2006) ("such motions are commonly viewed with disfavor and are rarely granted"). Moreover, courts rarely grant motions to strike class allegations by defendants. *See Cholakyan v. Mercedes-Benz USA, LLC*, 796 F. Supp. 2d 1220, 1245-46 (C.D. Cal. 2011); *Goode v. LexisNexis Risk & Info. Analytics Group, Inc.*, 284 F.R.D. 238, 244 (E.D. Pa. 2012) (courts rarely grant motions to strike under Rule 23(d)(1)(D), the same rule Defendant relies on here, prior to class discovery), and nearly every court to rule on a motion to strike TCPA class allegations filed without evidentiary support has denied the motion. *See, e.g.*, *Meyer v. Receivables Performance Mgmt., LLC*, No.

C12-2013, 2013 WL 1914392 (W.D. Wash. May 8, 2013); *cf. Landsman & Funk PC v. Skinder-Strauss Assocs.*, 640 F.3d 72, 92-95 (3d Cir. 2011).

It is well settled, and not questioned by Plaintiff, that a fail-safe class is impermissible. *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 538 (6th Cir. 2012); *Randleman v. Fidelity Nat'l Title Ins. Co.*, 646 F.3d 347, 352 (6th Cir. 2011); *Lindsay Transmission, LLC v. Office Depot, Inc.*, 2013 U.S. Dist. LEXIS 9554, at *11 (E.D. Mo. Jan. 24, 2013); *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 824-25 (7th Cir. 2012). However, where Plaintiff's contention lies is in what constitutes an impermissible fail-safe class, that is, the class "cannot be defined until the case is resolved on the merits" and the class members either "win or, by virtue of losing, they are not in the class and, therefore, not bound by the judgment." *Young*, 693 F.3d at 538; *Randleman*, 646 F.3d at 352-53. Specifically, Plaintiff looks to the distinction found in *Lindsay*, a case which Defendant relies largely on, for support.

In *Lindsay*, the plaintiff alleged that it received three unsolicited faxes advertising services available at a specific Office Depot location and filed a putative nationwide class action. 2013 U.S. Dist. LEXIS 9554 at *1-2. Unlike here, the parties engaged in discovery; the evidence included numerous declarations which disclosed that Office Depot, the sole defendant, did not have a policy of sending fax advertisements or train employees to advertise by fax, the fax received by the plaintiff was a flyer created for hand delivery, that a particular store manager from a single branch made the decision to send the fax advertisements on behalf of that branch, and that manager destroyed records listing fax recipients. *Id*.

The *Lindsay* court noted that the proposed class was a fail-safe class, a class defined to include only those with valid claims, because, like the putative class in this litigation, the plaintiff included lack of consent as an element of the class definition. *Id.* at *4. The court

looked at the evidence and explained that determining membership in this fail-safe class would require excessive individualized determinations because there was no "policy" or "leads list" uniting class members. *Id.* at *5. This differed from cases where classes were certified, which involved facts such as a large numbers of faxes sent on behalf of a defendant through a third party, or class membership that could be determined by reference to a list. *Id.* at *3-6.

Here, Plaintiff is able to differentiate the present facts from those presented in *Lindsay*, because no individualized determinations need be made as to the class members. As is made clear in the Amended Complaint, Defendant has been enrolling individuals in a program that automatically refills their prescriptions without first obtaining their approval and subsequently using an ATDS and/or prerecorded message to call cellular phones to tell individuals that a refilled prescription is ready. (Am. Compl. ¶ 17-18.) This enrollment is the equivalent of the "policy" or "leads lists" that were absent in *Lindsay*. *Compare St. Louis Heart Ctr., Inc. v. Forest Pharms., Inc.*, 2013 U.S. Dist. LEXIS 35563, at *20-22 (E.D. Mo. Mar. 13, 2013) (no factual basis for the court to find that the fax messages in question were an aberration). The enrollment data will suffice to identify each class and subclass Plaintiff proposes to represent. (*See* Am. Compl. ¶¶ 42-44.) Through discovery, the enrollment evidence will ultimately support or vacate the class certification thus alleviating the concerns of Defendant that mini-trials on the merits will need to be conducted. *See Landsman & Funk PC v. Skinder-Strauss Assocs.*, 640 F.3d 72, 93-94 (3d Cir. N.J. 2011) ("[I]n the specific context of claims filed under the TCPA statute, it is difficult to resolve without discovery whether there are factual issues regarding class members' business relationships with defendants or whether they consented.").

**II. Refining or correcting the class definition is the appropriate remedy.**

Crafting the class definition does not involve or require exacting precision. *See Messner* at 825 ("Defining a class so as to avoid, on one hand, being overinclusive and, on the other hand, the fail-safe problem is more of an art than a science."). As such, even if the Court were to find that the purported classes and subclasses are in fact fail-safe classes, the correct remedy is not a denial of class certification or dismissal. *See id.*; *see also Campbell v. First Am. Title Ins. Co.*, 269 F.R.D. 68, 73-74 (D. Me. 2010) (court revised class definition to correct problem). Either problem can and often should be solved by refining the class definition rather than by flatly denying class certification on that basis. *See id*.

For this reason, if the Court were so inclined to object to inclusion of the consent language that serves as the basis for Defendant's motion, the solution is to correct the deficiency in the class definition as in *Messner* and *Campbell*. In the instant case, Defendant's concern as to the classes' scope could be remedied by merely removing the consent language from the definition.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court deny the Defendant's Motion to Strike Plaintiff's Class Allegations.

Respectfully submitted,

**/s/ Brian K. Murphy**
Brian K. Murphy (0070654), Trial Attorney
Joseph F. Murray (0063373)
Geoffrey J. Moul (0070663)
Jennifer A. Hemenway (0089127)
Murray Murphy Moul + Basil LLP
1533 Lake Shore Drive
Columbus, OH  43204
(614) 488-0400
(614) 488-0401 *facsimile*
E-mail: murphy@mmmb.com
 murray@mmmb.com
 moul@mmmb.com
 hemenway@mmmb.com

Edward A. Broderick, Esq. *Pro Hac Vice to be filed*
Anthony Paronich, Esq. *Pro Hac Vice to be filed*
Broderick Law, P.C.
125 Summer St., Suite 1030
Boston, MA 02110
(617) 738-7080
(617) 314-7783 *facsimile*

Matthew P. McCue, Esq. *Pro Hac Vice to be filed*
The Law Office of Matthew P. McCue
340 Union Avenue
Framingham, MA 01790
(508) 620-1166
(508) 820-3311 *facsimile*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 27, 2014, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Joseph C. Pickens
Taft Stettinius & Hollister LLP
65 E. State Street, Suite 1000
Columbus, OH  43215
jpickens@taftlaw.com

Stephen H. Jett
Taft Stettinius & Hollister LLP
200 Public Square, Suite 3500
Cleveland, OH  44114
sjett@taftlaw.com

Robert H. Griffith
Foley & Lardner LLP
321 N. Clark Street, Suite 2800
Chicago, IL  60654
rgriffith@foley.com

Michael D. Leffel
Foley & Lardner LLP
150 East Gilman Street
Madison, WI  53703
mleffel@foley.com

                                               **/s/ Brian K. Murphy**
                                               Brian K. Murphy